UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID GIBSON,

Plaintiff,

v.

MOUNT VERNON MONTEFIORE
HOSPITAL EXECUTIVE DIRECTOR,
*et al.*,

Defendants.

No. 22-CV-4213 (KMK)

OPINION & ORDER

Appearances:

David Gibson
Bronx, NY
*Pro Se Plaintiff*

Mallory B. Turk, Esq.
Peter J. Fazio, Esq.
Aaronson Rappaport Feinstein & Deutsch, LLP
New York, NY
*Counsel for Defendant Mount Vernon Montefiore Hospital Executive Director*

Ian Ramage, Esq.
Office of the New York State Attorney General
New York, NY
*Counsel for Defendants Gaetan Zamilus and Janice Wolf-Friedman*

KENNETH M. KARAS, United States District Judge:

Plaintiff David Gibson ("Plaintiff") brings this Action pro se against the Mount Vernon

Montefiore Hospital ("MVMH") Executive Director; Gaetan Zamilus ("Zamilus"), Janice

Wolfriedman ("Wolf-Friedman," and together with Zamilus, the "DOCCS Defendants");[1] and

_____

[1] As used herein, DOCCS stands for "Department of Corrections and Community
Supervision."

Marie Samuels ("Samuels," and collectively with the MVMH Executive Director and the DOCCS Defendants, "Defendants").[2]  (*See* Compl. 1, 7 (Dkt. No. 1).)[3]  Construing his pleadings liberally—as the Court must—Plaintiff raises claims pursuant to 42 U.S.C. § 1983 ("§ 1983"), alleging violations of his rights under the Eighth and Fourteenth Amendments, and also raises negligence and medical malpractice claims under New York state law.  (*See generally id.*)  Before the Court are the MVMH Executive Director's and the DOCCS Defendants' respective Motions To Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motions").  (*See* MVMH Not. of Mot. (Dkt. No. 27); DOCCS Defs. Not. of Mot. (Dkt. No. 48).)  Also before the Court is Plaintiff's renewed application for the appointment of counsel.  (*See* Dkt. Nos. 36–37.)  For the reasons that follow, Defendants' Motions are granted without prejudice, and Plaintiff's application is denied without prejudice.

## I.  Background

### A.  Materials Considered

Beyond the allegations in his Complaint, Plaintiff has raised additional factual assertions in his various opposition submissions, (*see* Mem. of Law in Opp'n to MVMH Mot. ("Pl. MVMH Opp'n") (Dkt. No. 33); Pl. Aff. in Opp'n to MVMH Mot. ("Pl. MVMH Aff.") (Dkt. No. 34); Pl. Second Aff. in Opp'n to MVMH Mot. ("Pl. Second MVMH Aff.") (Dkt. No. 38); Second Mem. of Law in Opp'n to MVMH Mot. ("Pl. Second MVMH Opp'n") (Dkt. No. 39); Mem. of Law in

---

Additionally, the DOCCS Defendants clarify that, although she was sued as "Janice Wolfriedman," Wolf-Friedman's name is, in fact, "Janice Wolf-Friedman."  (*See* DOCCS Defs. Mem. of Law in Supp. of Mot. ("DOCCS Defs. Mem.") 5 (Dkt. No. 49).)

[2] The Court notes that Plaintiff has not yet effected service on Samuels.  (*See generally* Dkt.)

[3] Unless otherwise noted, the Court cites to the ECF-stamped page number at the upper right-hand corner of all documents, including Plaintiff's Complaint.

Opp'n to DOCCS Defs. Mot. ("Pl. DOCCS Defs. Opp'n") (Dkt. No. 50); Pl. Summ. J.

Submission (Dkt. No. 52)), and has also filed certain medical records, (*see* Pl. MVMH Aff. 4–5).

Generally, "[w]hen considering a motion to dismiss, the Court's review is confined to the

pleadings themselves" because "[t]o go beyond the allegations in the Complaint would convert

the Rule 12(b)(6) motion into one for summary judgment pursuant to [Rule] 56." *Thomas v.*

*Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002).

"Nevertheless, the Court's consideration of documents attached to, or incorporated by reference

in the Complaint, and matters of which judicial notice may be taken, would not convert the

motion to dismiss into one for summary judgment." *Id.*; *see also Bellin v. Zucker*, 6 F.4th 463,

473 (2d Cir. 2021) (explaining that "when ruling on Rule 12(b)(6) motions to dismiss," courts

may "consider the complaint in its entirety . . . , documents incorporated into the complaint by

reference, and matters of which a court may take judicial notice" (quotation marks omitted)); *Hu*

*v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019) ("In deciding a Rule 12(b)(6) motion, the

court may consider 'only the facts alleged in the pleadings, documents attached as exhibits or

incorporated by reference in the pleadings, and matters of which judicial notice may be taken.'"

(alteration omitted) (quoting *Samuels v. Air Transp. Loc. 504*, 992 F.2d 12, 15 (2d Cir. 1993))).

However, when reviewing a complaint submitted by a pro se plaintiff, the Court may also

consider "materials outside the complaint to the extent that they are consistent with the

allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4

n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including "[the plaintiff's] opposition

memorandum," *Gadson v. Goord*, No. 96-CV-7544, 1997 WL 714878, at *1 n.2 (S.D.N.Y.

Nov. 17, 1997), "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*,

No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted),

statements by the plaintiff "submitted in response to [a defendant's] request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), and "documents either in [the plaintiff's] possession or of which [the] plaintiff[] had knowledge and relied on in bringing suit," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotation marks omitted).

Because Plaintiff is proceeding pro se, the Court will consider the factual assertions raised for the first time in his opposition papers to the extent they are consistent with the Complaint. *See Gadson*, 1997 WL 714878, at *1 n.2; *accord Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a pro se party in his papers opposing the motion."); *Haywood v. Annucci*, No. 18-CV-10913, 2020 WL 5751530, at *1 n.1 (S.D.N.Y. Sept. 25, 2020) ("Where appropriate, the Court also considers factual allegations contained in Plaintiff's opposition papers, to the extent that those allegations are consistent with the Amended Complaint.").  The Court will likewise consider the medical records that Plaintiff has filed, which appear to be consistent with the allegations in his Complaint.  *See Stratton v. Narcise*, No. 23-CV-2152, 2023 WL 8436046, at *2–3 (S.D.N.Y. Dec. 5, 2023) (considering medical records that the plaintiff submitted after filing his complaint); *see also Freckleton v. Mercy Coll.*, No. 22-CV-1985, 2023 WL 2648827, at *1 (S.D.N.Y. Mar. 27, 2023) (considering factual allegations in the plaintiff's opposition brief, which was "approximately 180 pages" long and "consist[ed] mostly of attached exhibits," when deciding a motion to dismiss); *Dubarry v. Annucci*, No. 21-CV-5487, 2022 WL 4485359, at *2 (S.D.N.Y. Sept. 27, 2022) (considering fifteen exhibits that were attached to the plaintiffs' opposition brief when deciding motions to dismiss).

B.  Factual Background[4]

Unless otherwise stated, the following facts are drawn from the Complaint and Plaintiff's opposition papers.  (*See generally* Compl.; Pl. MVMH Opp'n; Pl. MVMH Aff.; Pl. Second MVMH Aff.; Pl. Second MVMH Opp'n; Pl. DOCCS Defs. Opp'n; Pl. Summ. J. Submission.) The facts alleged are assumed true for the purpose of resolving the instant Motions.  *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

In approximately December 2021, Plaintiff was incarcerated at Fishkill Correctional Facility ("Fishkill"), at least until he was transferred to Marcy Correctional Facility ("Marcy") on December 23, 2021.  (*See* Compl. 1–3.)[5]  While he was incarcerated, he was designated "OMH Level 15," in light the fact that he attempted to commit suicide multiple times "by swallowing foreign bodies."  (*Id.* at 1.)

One such suicide attempt occurred on or around December 17, 2021.  (*See* Pl. MVMH Opp'n 2.)  After he was allegedly raped at Fishkill,[6] Plaintiff "stuck a metal foreign object"—a "metal clip" from his "COVID mask," (Pl. MVMH Aff. 1)—"in his private area," (Pl. MVMH Opp'n 2).  The medical records Plaintiff has submitted reveal that the metal object was thereafter removed from his urethra and that a separate foreign body was "excreted . . . through feces."  (Pl. MVMH Aff. 5.)

---

[4] For the sake of clarity, when quoting Plaintiff's submissions, the Court will address typographical and grammatical issues without the use of brackets.

[5] It appears that Plaintiff has since been released from prison.  (*See* Not. of Change of Address (Dkt. No. 22).)

[6] This alleged rape is the subject of a separate action before this Court.  (*See* Compl. (Dkt. No. 1, 22-CV-1122 Dkt.).)

On December 18, 2021, Plaintiff swallowed a plastic spork and, as a result, was taken to MVMH. (*Id.*; Compl. 1.) Upon seeing Samuels—a physician who appears to have been treating Plaintiff—Plaintiff told her that he did not want surgery at MVMH and that he trusted "Westchester Medical" instead. (Compl. 1.) Plaintiff also informed Samuels that he had filed a report alleging that he had been a victim of prison rape at Fishkill. (*See id.*) Plaintiff states that he was in a "suicidal paranoid mind frame" during his time at MVMH and that he "wanted to die." (*Id.* at 1–2.)

Although he had only just been "cleared by MVMH" for his suicide attempt on December 17, 2021, Samuels allowed Plaintiff to be discharged against medical advice with the spork still inside of his body. (*Id.* at 2.) Plaintiff asserts that, prior to his discharge, Samuels did not call a mental health social worker to ensure that he was "in his right mind set." (*Id.*) As alleged, during this hospitalization the MVMH Executive Director did not enforce any policy for suicidal patients and did not have a "24/7" mental health social worker even though it has a "prison ward." (*Id.*)

Following his hospitalization, Plaintiff returned to Fishkill. (*See id.*; Pl. MVMH Aff. 5 (medical report discussing Plaintiff's condition upon his return from MVMH, including that he was placed on "suicide watch").) On December 22, 2021, Plaintiff was in an observation cell in light of his medical condition. (*See* Compl. 2.) Plaintiff alleges that, pursuant to DOCCS's "directive for contraband watch," he had to be x-rayed both "before and after he had two bowel movements." (*Id.*) After he "gave two bowel movements," Plaintiff alleges that, although the spork was still inside of his body, Zamilus—a physician working at Fishkill—refused to send him to "the hospital where he felt safe receiving surgery" with anesthesia, and instead placed him "on watch" outside of "medical." (*Id.* at 2–3.) Plaintiff also asserts that Zamilus failed to have a

6

CT scan ordered, even though he knew "radiolucent objects such as plastic" cannot be seen on an x-ray. (*Id.* at 3.)[7]

### C. Procedural History

Plaintiff' Complaint was docketed in the Northern District of New York (the "Northern District") on March 21, 2022. (*See* Compl.) By order dated May 19, 2022, then-Chief Judge Glenn T. Suddaby of the Northern District severed Plaintiff's claims arising from his time at MVMH and Fishkill and transferred them to this District, while retaining jurisdiction over any of Plaintiff's claims that arose in the Northern District. (*See generally* Decision and Order (Dkt. No. 3).)[8] The case was ultimately assigned to this Court on September 23, 2022. (*See* Dkt. (entry for Sept. 23, 2022).)

On March 8, 2023, the MVMH Executive Director filed a pre-motion letter seeking leave to file its Motion. (*See* Letter from Peter Fazio to Court (Mar. 8, 2023) (Dkt. No. 24).) The next day, the Court granted that request and established a briefing schedule. (*See* Order (Dkt. No. 25).) Pursuant to that briefing schedule, the MVMH Executive Director filed their Motion on April 11, 2023. (*See* MVMH Not. of Mot.; Decl. of Mallory Turk (Dkt. No. 27-1); MVMH Mem. of Law in Supp. of Mot. ("MVMH Mem.") (Dkt. No. 27-2).) Plaintiff filed his opposition papers on May 9, 2023. (*See* Pl. MVMH Opp'n; Pl. MVMH Aff.) On May 25, 2023, the

---

[7] Although it is not relevant to the claims here, Plaintiff's Complaint goes on to allege that—following his transfer to Marcy—other individuals there and at St. Elizabeth Medical Center also failed to provide him adequate medical treatment, such that the spork remained inside of his body until at least the time he filed his Complaint. (*See* Compl. 3–8.)

[8] With respect to Plaintiff's claims in the Northern District, Judge Suddaby ultimately dismissed with prejudice an amended complaint filed by Plaintiff. *See Gibson v. St. Elizabeth Med. Ctr. Hosp. Exec. Dir.*, No. 22-CV-270, 2022 WL 3719048, at *1–3 (N.D.N.Y. Aug. 18, 2022). The Second Circuit has since affirmed that decision. *See Gibson v. St. Elizabeth Med. Ctr. Hosp. Exec. Dir.*, No. 22-1868, 2023 WL 3295843, at *1 (2d Cir. May 8, 2023) (summary order).

MVMH Executive Director filed a reply.  (*See* MVMH Reply Mem. of Law in Further Supp. of Mot. ("MVMH Reply") (Dkt. No. 35).)  Then, on June 9, 2023, Plaintiff filed an application for the appointment of counsel, (*see* App. for Counsel (Dkt. No. 36)),[9] as well as two documents that support that application and also serve as a sur-reply to the MVMH Executive Director's Motion, (*see* Pl. Second MVMH Aff.; Pl. Second MVMH Opp'n.)  On June 23, 2023, the MVMH Executive Director filed a letter objecting to the filing of Plaintiff's sur-reply.  (Dkt. No. 40.)  Although Plaintiff did not request leave to file a sur-reply, and thus was in violation of the Court's Individual Rules of Practice, the Court will consider it in light of his pro se status.  *See Dash v. Bank of Am. Corp.*, No. 18-CV-4807, 2019 WL 1780140, at *3 n.9 (S.D.N.Y. Apr. 23, 2019) (accepting sur-reply of pro se litigant on motion to dismiss); *see also Panchishak v. County of Rockland*, No. 20-CV-10095, 2021 WL 4429840, at *2 (S.D.N.Y. Sept. 27, 2021) (same); *Munoz-Nagel v. Guess, Inc.*, No. 12-CV-1312, 2013 WL 1809772, at *1 n.1 (S.D.N.Y. April 30, 2013) (noting that although the court's individual rules required a party to obtain permission prior to filing a sur-reply, given plaintiff's pro se status, the court considered such a submission in connection with a motion to dismiss).

Separately, the DOCCS Defendants filed a pre-motion letter seeking leave to file their Motion on August 21, 2023.  (*See* Letter from Andrew Blancato to Court (Aug. 21, 2023) (Dkt. No. 46).)  The next day, the Court granted that request and established a briefing schedule.  (*See* Order (Dkt. No. 47).)  The DOCCS Defendants filed their Motion on September 21, 2023.  (*See* DOCCS Defs. Not. of Mot.; DOCCS Defs. Mem. of Law in Supp. of Mot. ("DOCCS Defs. Mem.") (Dkt. No. 49).)  Plaintiff filed his opposition on October 24, 2023.  (*See* Pl. DOCCS

---

[9] A separate notice of motion accompanied Plaintiff's application.  (*See* Dkt. No. 37.)

Defs. Opp'n.)  On November 2, 2023, the DOCCS Defendants filed their reply.  (*See* DOCCS

Defs. Reply Mem. of Law in Further Supp. of Mot. ("DOCCS Defs. Reply") (Dkt. No. 51).)

On January 8, 2024, Plaintiff filed an unauthorized motion for summary judgment.  (*See*

Pl. Summ. J. Submission.)  Although the Court denied that motion as premature, (*see* Dkt. No.

54), it did indicate that it would consider his submission in connection with deciding the instant

Motions, (*see* Dkt. No. 56).

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of

[its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil

Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "Nor does a complaint

suffice if it tenders naked assertions devoid of further factual enhancement."  *Id*. (alteration and

quotation marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a

right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Although "once a claim

has been stated adequately, it may be supported by showing any set of facts consistent with the

allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a

claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her]

claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id*.; *see*

*also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief

will . . . be a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id*. at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (citation and quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).  However, as noted, when a plaintiff is proceeding pro se, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah*, 2013 WL 3972514, at *4 n.3 (quotation marks omitted), including "[plaintiff's] opposition memorandum," *Gadson*, 1997 WL 714878, at *1 n.2, "documents that a pro se litigant attaches to his opposition papers," *Agu*, 2010 WL 5186839, at *4 n.6 (italics omitted), statements by the plaintiff "submitted in response to [a defendant's] request for a pre-motion conference," *Jones*, 2013 WL 5300721, at *2, and "documents either in

[the plaintiff's] possession or of which [the] plaintiff[] had knowledge and relied on in bringing suit," *Chambers*, 282 F.3d at 153 (quotation marks omitted).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [the plaintiff's] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (citation omitted).  However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law."  *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (citation and quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and citation omitted)).

   B.  Analysis

Liberally construed, Plaintiff's Complaint raises a number of claims arising under federal and state law.  Specifically, Plaintiff alleges that the MVMH Executive Director and Samuels violated his Eighth Amendment rights by demonstrating deliberate indifference to his "medical needs [and/or] mental health condition" when they allowed him to be discharged from the hospital after he swallowed a spork, without first calling "a mental health social worker to make sure he was in his right mind set." (Compl. 1–2.)  Plaintiff further asserts that the MVMH Executive Director (1) failed to implement and/or enforce a policy for suicidal patients, and (2) was negligent in hiring, training, and supervising Samuels, without properly teaching her how to treat incarcerated individuals.  (*See id.* at 2; *see also* Pl. MVMH Opp'n 1.)  Although it is unclear from the Complaint, Plaintiff may also be seeking to bring an equal protection claim against the MVMH Executive Director, on the basis that he was deprived of adequate medical treatment given his status in December 2021 as an incarcerated individual.  (*See* Compl. 2, 8; Pl. MVMH Opp'n 1.)  With respect to the DOCCS Defendants, Plaintiff asserts that they too

violated his Eighth Amendment rights when he was at Fishkill because he was given x-rays, but not CT scans, while he still had a spork inside of his body.  (*See* Compl. 2–3.)  Finally, Plaintiff appears to raise state-law negligence and medical malpractice claims against all Defendants. (*See generally id.* at 1–3, 8.)

In response to these allegations, the MVMH Executive Director argues that the Complaint must be dismissed as against them because there is no executive director position at MVMH, and because Plaintiff has failed to adequately allege their personal involvement for purposes of § 1983 in any event.  (*See* MVMH Mem. 7–8.)  The MVMH Executive Director also asserts that Plaintiff's service of process was ineffective.  (*See id.* at 8–11.)  Substantively, the MVMH Executive Director argues that Plaintiff has failed to plead facts sufficient to meet the requirements for stating either an Eighth Amendment deliberate indifference claim or a Fourteenth Amendment equal protection claim.  (*See id.* at 11–13.)  To the extent the federal claims against them are dismissed, the MVMH Executive Director also asserts that the Court should decline to exercise supplemental jurisdiction over any remaining state law claims and that Plaintiff has failed to meet New York's state-law requirements for bringing a medical malpractice claim.  (*See id.* at 14.)  Finally, the MVMH Executive Director notes on reply that the constitutional claims against it are defective because it is a "private hospital."  (MVMH Reply 5.)

For their part, the DOCCS Defendants assert that Plaintiff has failed to allege the personal involvement of Wolf-Friedman in his alleged constitutional harms.  (*See* DOCCS Defs. Mem. 8–9.)  Further, the DOCCS Defendants argue that Plaintiff has failed to make out a claim for deliberate indifference under the Eighth Amendment, and that, in any event, they would be entitled to qualified immunity even if Plaintiff had adequately alleged their deliberate

indifference to his medical needs.  (*See id.* at 10–14.)  The DOCCS Defendants finally assert that Plaintiff's state-law claims against them are barred in federal court under New York Corrections Law § 24.  (*See id.* at 12–13.)

The Court will address Defendants' arguments to the extent necessary to resolve the instant Motions.

### 1.  Federal Claims Against the MVMH Executive Director

The Court first considers the MVMH Executive Director's arguments for dismissal as to Plaintiff's federal-law claims.

#### a.  Service

The MVMH Executive Director contends that Plaintiff's service of the summons and Complaint was untimely and that Plaintiff's method of service was improper under Rule 4 of the Federal Rules of Civil Procedure (the "Federal Rules").  (MVMH Mem. 8–11.)  The Court concludes that, even assuming service as to the MVMH Executive Director was timely, it was not properly effectuated pursuant to Rule 4.[10]

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)."  *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007).  Valid service is a prerequisite for a federal court to assert personal jurisdiction over a claim.  *See Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987).  "When a defendant moves to dismiss under Rule 12(b)(5), the plaintiff bears the burden

---

[10] The MVMH Executive Director has moved to dismiss the Complaint pursuant to Rule 12(b)(6) only.  (*See generally* MVMH Not. of Mot.; MVMH Mem.; MVMH Reply.)  However, the Court construes their arguments regarding Plaintiff's alleged service deficiencies as alternatively moving to dismiss the Complaint pursuant to Rule 12(b)(5) for insufficient service of process.

of proving adequate service." *Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010)

(alteration adopted) (quotation marks omitted); *see also Tomney v. Int'l Ctr. for the Disabled*,

No. 02-CV-2461, 2003 WL 1990532, at *3 (S.D.N.Y. Apr. 29, 2003) ("Once a defendant raises a

challenge to the sufficiency of service of process, the plaintiff bears the burden of proving its

adequacy."). In determining the sufficiency of service, the Court "must look to matters outside

the complaint to determine what steps, if any, the plaintiff took to effect service." *C3 Media &*

*Mktg. Grp., LLC v. Firstgate Internet, Inc.*, 419 F. Supp. 2d 419, 427 (S.D.N.Y. 2005) (quotation

marks omitted); *see also PH Int'l Trading Corp. v. Nordstrom, Inc.*, No. 07-CV-10680, 2009

WL 859084, at *3 (S.D.N.Y. Mar. 31, 2009) ("A court may, on a Rule 12(b)(5) motion to

dismiss, consider affidavits and documents submitted by the parties without converting the

motion into one for summary judgment under Rule 56." (alteration adopted) (quotation marks

omitted)).

Under the Federal Rules, "[a]ny person who is at least 18 years old *and not a party* may

serve a summons and complaint." Fed. R. Civ. P. 4(c)(2) (emphasis added). In other words,

"parties are ineligible to serve their own process under Rule 4(c)(2)." *Kennedy v. Peters*, No. 23-

CV-195, 2023 WL 5977237, at *2 (N.D.N.Y. Sept. 14, 2023) (explaining that, under Rule

4(c)(2) a pro se plaintiff's attempt to serve his own complaint "was defective regardless of any

other deficiencies that might have been present in his" attempted service); *see also Duan v. U.S.*

*Citizenship & Immigr. Servs.*, No. 22-CV-1538, 2022 WL 2526896, at *1 (E.D.N.Y. July 6,

2022) ("A party to a lawsuit is not permitted to serve a copy of the summons and complaint on a

defendant."); *Pruthi v. Empire City Casino*, No. 18-CV-10290, 2022 WL 596370, at *4

(S.D.N.Y. Feb. 28, 2022) (dismissing the complaint where "the docket show[ed] that [the] pro se

[p]laintiff personally attempted to effectuate service on each of [the d]efendants, contrary to Rule

14

4(c)(2)['s] explicit prohibition against parties personally serving a summons and complaint"

(italics omitted)).

Here, the MVMH Executive Director asserts that:

[Plaintiff] appeared at [MVMH,] demanding to speak to the executive director.
When the Administrative Supervisor arrived with security, [Plaintiff] claimed to
start recording her despite security advising he was not permitted to do that.  The
papers were ultimately accepted to de-escalate the situation.

(MVMH Mem. 11.)  Plaintiff does not dispute these allegations and, instead, only argues that he

attempted to effect personal service on the MVMH Executive Director under Rule 4.  (Pl.

Second MVMH Opp'n 1.)  Thus, because Plaintiff attempted to effect service himself and

therefore failed to follow the requirements of Rule 4, the Court cannot exercise personal

jurisdiction over this Defendant.[11]  *See Omni Cap.*, 484 U.S. at 104; *see also Kennedy*, 2023 WL

5977237, at *2; *Duan*, 2022 WL 2526896, at *1; *Pruthi*, 2022 WL 596370, at *4.[12]

---

[11] Although Rule 4 also permits plaintiffs to effect service by "following state law for
serving a summons in an action brought in courts of general jurisdiction in the state where the
district court is located or where service is made," Fed. R. Civ. P. 4(e)(1), the Court notes that
New York law likewise forbids plaintiffs from serving their own process, *see* N.Y.
C.P.L.R. 2103(a) ("[P]apers may be served by any person *not a party* of the age of eighteen
years or over." (emphasis added)).

[12] Notwithstanding this analysis regarding Plaintiff's deficient service, the Court will
proceed to consider the merits of the MVMH Executive Director's Motion.  It does so because,
although Plaintiff's service was deficient, the MVMH Executive Director did not expressly claim
a lack of personal jurisdiction or even mention personal jurisdiction in its Motion.  Indeed, the
MVMH Executive Director evidently declined to move to dismiss pursuant to Rule 12(b)(2) for
lack of personal jurisdiction or, as noted, Rule 12(b)(5) for insufficient service of process.
"Accordingly, the Court proceeds on the basis that [the MVMH Executive Director's] has
consented to the Court's exercise of personal jurisdiction over it at this time for the limited
purpose of resolving the 12(b)(6) motion."  *Root v. Corning Cmty. Coll.*, No. 17-CV-6498, 2019
WL 368098, at *6 n.18 (W.D.N.Y. Jan. 30, 2019) (coming to the same conclusion); *see also
Barkai v. Nuendorf*, No. 21-CV-4060, 2023 WL 2691712, at *36 (S.D.N.Y. Mar. 29, 2023)
(reviewing the plaintiff's allegations against defendants who were "not yet properly served . . . in
light of clear precedent dictating the outcome of [his] claims").
     In addition, although Plaintiff's attempted service on the MVMH Executive Director was
plainly improper and inappropriate, the Court is somewhat sympathetic to the Plaintiff's
difficulties with respect to service.  In this case, the Court issued an Order of Service on

b.  State Actor

In their reply brief, the MVMH Executive Director notes that MVMH is "a private hospital" and that doctors at MVMH—such as Samuels—"are not government officials." (MVMH Reply 5.)

A claim for relief under § 1983 must allege facts showing that the defendant acted under the color of a state "statute, ordinance, regulation, custom or usage[.]" 42 U.S.C. § 1983. "Thus, to state a claim under § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a 'state actor.'" *Burgdorf v. Betsy Ross Nursing and Rehab. Ctr. Inc.*, No. 22-CV-987, 2023 WL 112092, at *5 (N.D.N.Y. Jan. 5, 2023) (quoting *West v. Atkins*, 487 U.S. 42, 48–49 (1988)), *report and recommendation adopted*, 2023 WL 418045, at *1 (N.D.N.Y. Jan. 26, 2023). Private parties are generally not state actors, and are therefore not usually liable under § 1983. *See Sykes*, 723 F.3d at 406 (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties . . . ." (quotation marks and citation omitted)).

In the § 1983 context, the actions of a nominally private entity are attributable to the state when: "(1) the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state ('the compulsion test'); (2) when the state provides 'significant encouragement' to the

---

September 29, 2022, directing Plaintiff to serve Defendants. (*See* Dkt. No. 11.) Approximately two months later, the Court granted Plaintiff's request to proceed in forma pauperis and, as a result, Plaintiff became eligible for the assistance of the U.S. Marshals Service to effect service. (*See* Dkt. No. 16–17.) Indeed, the Court issued a second Order of Service relating to all Defendants—including the MVMH Executive Director—on November 28, 2022. (*See* Dkt. No. 17.) However, the docket does not reflect any attempted service on the MVMH Executive Director on the part of the Marshals Service. (*See generally* Dkt.)

entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity 'has been delegated a public function by the [s]tate,' ('the public function test')." *Caballero v. Shayna*, No. 18-CV-1627, 2019 WL 2491717, at *3 (E.D.N.Y. June 14, 2019) (alteration in original) (quoting *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008)). "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state." *Id.* (quoting *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012)).

It is clear to the Court that MVMH is a private hospital. *See* U.S. Dep't of Housing and Urban Dev., Montefiore Med. Ctr. Bronx, N.Y., https://www.hud.gov/federal_housing_administration/healthcare_facilities/section_242/success_stories/montefiore_medical_center (last visited Mar. 15, 2024) ("Montefiore is a private, non-profit 501(c)(3), acute care hospital with a voluntary governing board, and is the University Hospital for the Albert Einstein College of Medicine."); *see also Montefiore Mount Vernon Hospital*, Montefiore Health Sys., https://www.montefiorehealthsystem.org/MountVernon (last visited Mar. 15, 2024) (explaining that MVMH "is part of Montefiore Health System, a premier academic medical center and the University Hospital system for Albert Einstein College of Medicine").[13]

---

[13] "When considering a motion made pursuant to Rule 12(b)(6), the Court may take judicial notice of 'documents retrieved from official government websites' . . . ." *Jones v. Cuomo*, 542 F. Supp. 3d 207, 211 n.1 (S.D.N.Y. 2021) (quoting *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015)); *see also, e.g., J.T. v. de Blasio*, 500 F. Supp. 3d 137, 149 (S.D.N.Y. 2020) (taking judicial notice of documents "that were published on an official government web site"); *Williams v. PMA Cos.*, 419 F. Supp. 3d 471, 484 (N.D.N.Y. 2019) (same). District courts "have [also] regularly taken judicial notice of publicly available . . . writings on websites when the parties do not dispute the authenticity of the

Putting aside MVMH's status, Plaintiff does not specifically raise any allegations or make any arguments suggesting that the MVMH Executive Director—or, indeed, Samuels—is a state actor for purposes of § 1983.  At most, Plaintiff alleges that MVMH and DOCCS are "linked" by contract.  (*See* Pl. Second MVMH Opp'n 2, 16.)  Construed liberally, Plaintiff may be seeking to allege that MVMH is a "joint actor" with the state (through DOCCS).  "Under the 'joint action' doctrine, a private actor can be found 'to act under color of state law for § 1983 purposes if . . . the private party is a willful participant in joint action with the [s]tate or its agents." *Hollman v. County of Suffolk*, No. 06-CV-3589, 2011 WL 280927, at *8 (E.D.N.Y. 2011) (alteration adopted) (quoting *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)).  "The touchstone of joint action is often a 'plan, prearrangement, conspiracy, custom, or policy' shared by the private actor and the [state actors]." *Forbes v. City of New York*, No. 05-CV-7331, 2008 WL 3539936, at *5 (S.D.N.Y. Aug. 12, 2008) (quoting *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999)).  "Mere cooperation with a state official . . . is insufficient to establish state action." *Estiverne v. Esernio-Jenssen*, 910 F. Supp. 2d 434, 442 (E.D.N.Y. 2012) (citing *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998); *San Filippo v. U.S. Tr. Co. of N.Y.*, 737 F.2d 246, 252, 256 (2d Cir. 1984)).  Instead, "a plaintiff must show that the private citizen and the state official shared a common unlawful goal." *Hollman*, 2011 WL 280927, at *8 (citation omitted).

Plaintiff's pleadings fail to establish that MVMH and DOCCS engaged in any sort of "joint action" action for purposes of § 1983.  Plaintiff does not allege that that MVMH—through its Executive Director or anyone else—shared a "common unlawful goal" with DOCCS as it

---

documents." *McKenna v. Nassau County*, No. 23-CV-4286, 2023 WL 8455670, at *6 (E.D.N.Y. Dec. 6, 2023) (collecting cases).

relates to Plaintiff, *see Hollman*, 2011 WL 280927, at *8, nor does he describe any "plan, prearrangement, conspiracy, custom, or policy" shared between them. *Forbes*, 2008 WL 3539936, at *5.

   To the extent that Plaintiff's papers could be construed as asserting that MVMH and its employees have been "delegated a public function by the [s]tate," *Caballero*, 2019 WL 2491717, at *3 (citation omitted), "[t]he [Supreme] Court has stressed that 'very few' functions fall into that category[,]" *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019) (quoting *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 158 (1978)) (explaining that "to qualify as a traditional, exclusive public function within the meaning of our state-action precedents, the government must have traditionally *and* exclusively performed the function" (emphasis in original)).   "Public functions may include running elections and operating a company town but not running sports associations and leagues, administering insurance payments, operating nursing homes, providing special education, representing indigent criminal defendants, resolving private disputes, or supplying electricity." *DuBois v. Bedford-Flatbush Chiropractic, P.C.*, 409 F. Supp. 3d 62, 69–70 (E.D.N.Y. 2019).   More to the point, courts regularly have found that private hospitals do not perform public functions. *See Barkai*, 2023 WL 2691712, at *37 (suggesting that Montefiore Nyack Hospital and certain of its employees' provision of health care services did not meet the public function test for purposes of § 1983); *see also White v. St. Joseph's Hosp.*, 369 F. App'x 225, 226 (2d Cir. 2010) (summary order) ("[P]rivate actors and institutions, such as the hospitals, nursing home, and cemetery named as defendants in [plaintiff's] complaint, are generally not proper § 1983 defendants because they do not act under color of state law."); *Thomas v. Mohawk Valley Health Sys.*, No. 20-CV-1347, 2020 WL 6504634, at *6 (N.D.N.Y.

Nov. 5, 2020) (rejecting the plaintiff's argument that defendant Mohawk Valley Health System was a state actor, merely because it was a private institution that received public funding).

In short, Plaintiff has not pled that the MVMH Executive Director is a state actor. Accordingly, Plaintiff's federal claims against MVMH and its Executive Director are dismissed. *See Cheeks v. Montefiore Med. Ctr.*, No. 23-CV-2170, 2023 WL 8235755, at *1–2 (S.D.N.Y. Nov. 28, 2023) (dismissing constitutional claims against Montefiore Medical Center because "Montefiore, as a private hospital, [was] not a state actor for purposes of [§] 1983"); *see also Washington v. Tocco*, No. 23-CV-5561, 2023 WL 6607402, at *1–2 (S.D.N.Y. Oct. 10, 2023) (dismissing constitutional claims against "a private doctor working at a private hospital" because there were "no allegations that he work[ed] for, or ha[d] any affiliation with, any state or other government body"); *Hussey v. Beth Israel Med. Ctr.*, No. 23-CV-4375, 2023 WL 5612392, at *2 (S.D.N.Y. Aug. 28, 2023) (similar and collecting cases); *Surpris v. Montefiore Mount Vernon Hosp.*, No. 21-CV-7654, 2021 WL 5853583, at *3 (S.D.N.Y. Dec. 7, 2021) (similar with respect to MVMH and its staff).[14]

---

[14] Because Plaintiff's federal claims against unserved Defendant Samuels suffer from the same deficiency—namely, that she is not a state actor—those claims are dismissed as well. *See Garcia v. City of New York*, No. 15-CV-7470, 2017 WL 1169640, at *1 n.1 (S.D.N.Y. Mar. 28, 2017) ("Although Rojas and Larson have yet to be served, because Plaintiffs' claims against them are the same as the claims against Ovando and Smyth and suffer from the same deficiencies, the Court will treat the instant motion as if it were brought on behalf of all Defendants."); *Johnson v. New York City*, No. 12-CV-4379, 2013 WL 950870, at *3 (S.D.N.Y. Mar. 7, 2013) ("As the same conviction underlies plaintiff's claims against defendant Thomas Woods (who has not yet been served in this action), the Court dismisses the Complaint with respect to Woods sua sponte." (italics omitted)); *Hamilton v. Broomfield*, No. 95-CV-3241, 1998 WL 17697, at *1 n.1 (S.D.N.Y. Jan. 20, 1998) (dismissing claims against unserved defendants because they were identical to claims against defendants who filed the motion to dismiss).

### 2.  Federal Claims Against the DOCCS Defendants

The Court next considers the DOCCS Defendants' arguments for dismissal regarding Plaintiff's claims arising under federal law.

### a.  Personal Involvement

The DOCCS Defendants assert that "Plaintiff's claims against Defendant Wolf-Friedman fail because he fails to demonstrate how . . . [she] was personally involved in his alleged constitutional harm."  (DOCCS Defs. Mem. 8.)  The Court agrees.

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation."  *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013); *see also Davila v. Johnson*, No. 15-CV-2665, 2015 WL 8968357, at *4 (S.D.N.Y. Dec. 15, 2015) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (internal quotation marks omitted)).  "[A] plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quotation marks omitted); *see also Taranto v. Putnam County*, No. 21-CV-2455, 2023 WL 6318280, at *13 (S.D.N.Y. Sept. 28, 2023) (same); *Leneau v. Ponte*, No. 16-CV-776, 2018 WL 566456, at *15 (S.D.N.Y. Jan. 25, 2018) (dismissing allegations against a defendant for lack of personal involvement because the "[p]laintiff's general allegation that all defendants were involved in the alleged constitutional violations [did] not rescue the claims against" a particular defendant).  Accordingly, "a plaintiff may not rely on a special test for supervisory liability"; instead, "[t]he violation must be established against the supervisory official directly."  *Tangreti*, 983 F.3d at 616–18.

The only allegation in Plaintiff's Complaint concerning Wolf-Friedman is that she, along with Zamilus, committed medical malpractice by "clearing Plaintiff from his medical hold" at Fishkill, following his release from MVMH.  (Compl. 2.)  In his opposition to the DOCCS Defendants' Motion, Plaintiff adds only that Wolf-Friedman:  (1) was "well aware radiolucent objects, such as plastic, do not show on x-rays," (Pl. DOCCS Defs. Opp'n 2); and (2) was aware of Plaintiff's history of suicide attempts and mental health issues, (*see id.* at 3–4).[15]  Crucially, Plaintiff does *not* allege that Wolf-Friedman was personally involved in the events giving rise to his Eighth Amendment claim—namely, *Zamilus's* decision to not to send Plaintiff for a CT scan while the spork was still inside of his body.  (*See* Compl. 2–3.)

Aside from his sole, conclusory allegation linking Wolf-Friedman to his state-law medical malpractice claim, (*see id.* at 2), Plaintiff has failed to allege that Wolf-Friedman was involved in any asserted constitutional violation.  Indeed, he does not even allege that she saw or treated him upon his return from MVMH.  Simply put, Plaintiff's allegations as to what Wolf-Friedman knew about radiolucent objects and his mental health history do not establish that she was personally involved in any alleged constitutional harm.  *See Taranto*, 2023 WL 6318280, at *14 (concluding—in connection with an excessive force claim—that personal involvement was not established where the plaintiffs alleged that a defendant "failed to intercede to terminate [an] assault" and "was personally aware of the events complained of . . . as they were occurring," but did not allege that he "was present during the incident at issue or how he somehow permitted the use of force to occur"); *Falls v. Pitt*, No. 16-CV-8863, 2018 WL 3768036, at *6 (S.D.N.Y. Aug. 8, 2018) (concluding that personal involvement was not established where the plaintiff failed to

---

[15] Although it is not relevant to Plaintiff's claims against her, the Court notes that Plaintiff states—almost as an aside—that Wolf-Friedman witnessed him swallow a metal clip earlier in December 2021.  (*See* Pl. MVMH Aff. 1.)

allege that the defendants were "present" for the alleged violation or "participated directly" in or "somehow permitted" the alleged violation); *Lara-Grimaldi v. County of Putnam*, No. 17-CV-622, 2018 WL 1626348, at *11 (S.D.N.Y. Mar. 29, 2018) (holding that personal involvement was not established where the "[c]omplaint contain[ed] no allegations whatsoever that [the defendant] was involved in, aware of, or somehow permitted" the violation).[16]

### b. Deliberate Indifference

The DOCCS Defendants also contend that Plaintiff has failed to plead facts alleging an Eighth Amendment deliberate indifference claim.  (*See* DOCCS Defs. Mem.10–12.)

"The Eighth Amendment forbids 'deliberate indifference to serious medical needs of prisoners . . . .'"  *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  To state a claim of deliberate indifference, Plaintiff must plausibly allege (1) "that he suffered a sufficiently serious constitutional deprivation," and (2) that Defendants "acted with deliberate indifference."  *Feliciano v. Anderson*, No. 15-CV-4106, 2017 WL 1189747, at *8 (S.D.N.Y. Mar. 30, 2017).

"The first requirement is objective: the alleged deprivation of adequate medical care must be sufficiently serious."  *Spavone*, 719 F.3d at 138 (citation and quotation marks omitted).  In other words, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health."  *Walker*, 717 F.3d at 125 (citations omitted). Analyzing this objective requirement involves two inquiries: "whether the prisoner was actually deprived of adequate medical care," *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006), and "whether the inadequacy in medical care is sufficiently serious," which in turn "requires the

---

[16] Even if Plaintiff had adequately plead Wolf-Friedman's personal involvement in the constitutional harm asserted in the Complaint, the Court notes that, as explained below, Plaintiff nevertheless failed to state an Eighth Amendment deliberate indifference claim against her.  *See infra* Section II.B.2.b.

[C]ourt to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner," *id*. at 280 (citation omitted).  "There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition."  *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003).  Nevertheless, the Second Circuit has suggested the following non-exhaustive list of factors to consider when evaluating an inmate's medical condition: "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'"  *Id*. (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

"The second requirement is subjective: the charged officials must be subjectively reckless in their denial of medical care."  *Spavone*, 719 F.3d at 138.  This means that Defendants must "appreciate the risk to which a prisoner was subjected," and have a "subjective awareness of the harmfulness associated with those conditions."  *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017); *see also Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) ("Deliberate indifference is a mental state equivalent to subjective recklessness," and it "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." (citation and quotation marks omitted)).  A defendant's awareness of the risk of serious harm can be established through "inference from circumstantial evidence," including "from the very fact that the risk was obvious."  *Farmer v. Brennan*, 511 U.S. 825, 842 (1994).  However, "mere negligence" is insufficient to state a claim for deliberate indifference.  *Walker*, 717 F.3d at 125 (citation and quotation marks omitted).

"It is well-established that mere disagreement over the proper treatment does not create a constitutional claim." *Chance*, 143 F.3d at 703. "A medical decision not to order an X-ray[] or like measures" "is a classic example of a matter for medical judgment" that "does not represent cruel and unusual punishment." *Estelle*, 429 U.S. at 107; *see also Stephens v. Ruiz*, No. 20-CV-1450, 2021 WL 371578, at *4 (D. Conn. Feb. 3, 2021) ("[D]isagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a [§] 1983 claim" (citation omitted)).

Construing his allegations liberally, Plaintiff alleges only that the DOCCS Defendants—and especially Zamilus—"committed medical malpractice by his deliberate indifference to Plaintiff's medical needs" by relying on x-rays, rather than CT scans, to determine whether Plaintiff had passed the spork. (Compl. 2–3.) However, courts in the Second Circuit routinely hold that such medical judgments do not amount to deliberate indifference in violation of the Eighth Amendment. *See, e.g.*, *Robbs v. McCrystal*, No. 20-CV-1584, 2023 WL 2526533, at *12 (D. Conn. Mar. 15, 2023) ("[M]edical decisions, such as whether to order x-rays, MRIs, or other diagnostic tests do not generally implicate the Eighth Amendment's prohibition against cruel and unusual punishment."); *Youmans v. City of New York*, 14 F. Supp. 3d 357, 363–64 (S.D.N.Y. 2014) (holding that failure to provide an MRI or CT scan and a second opinion fails to satisfactorily plead deliberate indifference); *Gumbs v. Dynan*, No. 11-CV-857, 2012 WL 3705009, at *14 (E.D.N.Y. Aug. 26, 2012) ("[A] medical judgment is not deliberate indifference just because it is not the inmate's preferred course of treatment. Whether to order an MRI or similar diagnostic treatments is a classic example of a matter for medical judgment, and where the treatment provided is responsive to the prisoner's condition, . . . the fact that a prisoner might

prefer different treatment does not give rise to a [c]onstitutional violation." (second alteration in original) (citation and quotation marks omitted)); *Fulmore v. Mamis*, No. 00-CV-2831, 2001 WL 417119, at *8–9 & n. 26 (S.D.N.Y. Apr. 23, 2001) (holding that a physician's failure to order CAT scan reflected, "[a]t most, . . . a difference in opinion as to [a prisoner's] medical treatment rather than any deliberate indifference to [the prisoner's] medical needs"); *see also Smalls v. Wright,* 807 F. App'x 124, 126 (2d Cir. 2020) (summary order) (concluding that a defendant's "decisions not to order an MRI and not to refer [the plaintiff] to a specialist constitute matters of medical judgment that do not give rise to an Eighth Amendment violation"); *Riddick v. Maurer*, 730 F. App'x 34, 37–38 (2d Cir. 2018) (summary order) (affirming denial of injunctive relief based on the inmate-plaintiff's claims concerning denials of MRIs, x-rays, and a new mattress because they constituted "mere disagreements over treatment"). In short, "[t]he fact that a prisoner might prefer different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703. Thus, Plaintiff's deliberate indifference claim, as alleged, cannot survive the DOCCS Defendants Motion To Dismiss.

In his opposition to the DOCCS Defendants' Motion, Plaintiff relies heavily on *Hathaway v. Coughlin*, 99 F.3d 550 (2d Cir. 1996). (Pl. DOCCS Defs. Opp'n 2, 4–5.) However, that case is entirely distinguishable on its facts. Specifically, the plaintiff in that case alleged that certain DOCCS defendants "did not tell [him] about two broken pins in his left hip until a year after [a prison-doctor defendant] had discovered that the pins were broken, and then took another year to schedule [the plaintiff] for surgery to repair the damage caused by the broken pins." *Hathaway*, 99 F.3d at 551–52. In the interim, the plaintiff alleged that "he frequently complained of severe pain in his hip to [the prison-doctor defendant] and other prison officials." *Id.* at 552. Here, by contrast, Plaintiff's submissions make clear that he was regularly seen by

medical professionals, taken to hospitals, and otherwise received medical treatment relating to the foreign bodies that he swallowed soon after he swallowed them.  (*See generally* Compl.; *see also* Pl. MVMH Aff. 4–5.)

In sum, the Court concludes that, based on the allegations in his Complaint and subsequent submissions, Plaintiff has failed to state an Eighth Amendment deliberate indifference claim against the DOCCS Defendants.

### 3.  State-Law Claims Against All Defendants

The Court turns next to Plaintiff's state-law claims against all Defendants.  The DOCCS Defendants argue that that Plaintiff's state-law claims against them are barred in federal court in light of New York Corrections Law § 24.  (*See* DOCCS Defs. Mem. 12–13.)  The Court agrees.

Under New York Corrections Law § 24, "[n]o civil action shall be brought in any court of the state . . . against any officer or employee of [DOCCS] . . . in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of employment and in the discharge of duties by such officer or employee."  *McCray v. Lee*, No. 16-CV-1730, 2021 WL 4392280, at *11 (S.D.N.Y. Sept. 24, 2021) (alterations in original) (quoting N.Y. Correct. Law § 24); *see also Baker v. Coughlin*, 77 F.3d 12, 15 (2d Cir. 1996) (holding that § 24 applies to claims in federal court).  "Courts in the Second Circuit have long held that [§] 24 precludes a plaintiff from raising state law claims in federal court against state employees in their personal capacities for actions arising within the scope of their employment." *Davis v. McCready*, 283 F. Supp. 3d 108, 123–24 (S.D.N.Y. 2017) (collecting cases).  "Section 24 applies here, as the misconduct alleged arose as a result of [the DOCCS Defendants] discharging their duties" as medical staff at a state correctional facility.  *Rodriguez v. Palmer*,

27

No. 21-CV-8078, 2023 WL 8603124, at *2 (S.D.N.Y. Dec. 12, 2023) (quotation marks omitted).[17]

With respect to the state-law claims against the MVMH Executive Director, the Court agrees that it should decline to exercise supplemental jurisdiction here.  (*See* MVMH Mem. 14.) Where a district court "has dismissed all claims over which it has original jurisdiction," it "may decline to exercise supplemental jurisdiction" over any remaining claims.  *See* 28 U.S.C. § 1367(c)(3).  "Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional values of judicial economy, convenience, fairness, and comity, in deciding whether to exercise jurisdiction."  *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (citation and quotation marks omitted).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."); *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994) ("It is axiomatic that when all federal claims are eliminated prior to trial, a court should decline to exercise jurisdiction over

---

[17] In 2009, the Supreme Court declared New York Correction Law § 24 unconstitutional insofar as it was applied to prevent plaintiffs from bringing § 1983 claims in New York state court.  *Haywood v. Drown*, 556 U.S. 729, 740 (2009).  *Haywood* "does not, however, prevent [§ 24] from stripping New York state courts of jurisdiction over a plaintiff's analogous state law claims against [DOCCS] officials."  *Hassell v. Fischer*, 96 F.Supp.3d 370, 385 n.14 (S.D.N.Y. 2015) (emphasis omitted).  Therefore, "the Second Circuit's holding in *Baker v. Coughlin*—that federal courts cannot exercise pendent jurisdiction over state law claims that a plaintiff could not bring in state court—is unaffected by the *Haywood* decision."  *Id.*; *accord Davis*, 283 F. Supp. 3d at 124 n.13; *Brown v. Dep't of Corr. Servs.*, No. 09-CV-949, 2011 WL 2182775, at *8 (W.D.N.Y. June 2, 2011) (explaining that *Haywood* did not address "whether § 24 precludes [a plaintiff's] proposed New York common law claims in [federal] court").

any remaining pendent state claims." (quotation marks omitted)); *Erie Grp. LLC v. Guayaba Cap., LLC*, 110 F. Supp. 3d 501, 511 n.68 (S.D.N.Y. 2015) (same).

The Court finds nothing that distinguishes this Action from "the usual case." *See Cohill*, 484 U.S. at 350 n.7. Plaintiff's federal claims against the MVMH Executive Director have all been dismissed, *see Dellutri v. Village of Elmsford*, 895 F. Supp. 2d 555, 575 (S.D.N.Y. 2012) (declining to exercise supplemental jurisdiction where "th[e] case remains in its initial stages, and the [p]arties have not yet proceeded to discovery"); *Middleton v. United States*, No. 10-CV-6057, 2012 WL 394559, at *1 (E.D.N.Y. Feb. 7, 2012) (declining to exercise supplemental jurisdiction because no federal claims survived a motion to dismiss), and none of the factors that the Supreme Court enunciated in *Cohill*—"judicial economy, convenience, fairness, [or] comity"—counsels against such dismissal, 484 U.S. at 350 n.7. Thus, Plaintiff's state claims against the MVMH Executive Director are dismissed without prejudice.

### 4.  Appointment of Counsel

Finally, the Court notes that Plaintiff has renewed his request for the appointment of counsel. (*See* App. for Counsel.) On November 29, 2022, the Court denied without prejudice Plaintiff's prior application for the appointment of counsel. (*See* Order ("Nov. 29, 2022 Order") (Dkt. No. 18).) As far as the Court can tell, Plaintiff has renewed his application because he would like the Court to appoint an attorney to investigate who might be an alternative defendant given that MVMH asserts that it has no Executive Director. (*See generally* App. for Counsel; Pl. Second MVMH Aff.; Pl. Second MVMH Opp'n.) However, Plaintiff has not provided the Court with any additional information regarding a change in his own circumstances that would support a renewed request for the appointment counsel; instead, he simply asks the Court to "reconsider" his prior request. (Pl. Second MVMH Aff. 2.) Accordingly, the Court denies Plaintiff's

application without prejudice for the same reasons set forth in the Court's prior Order.  (*See* Nov. 29, 2022 Order.)

## III.  Conclusion

For the foregoing reasons, the Court grants both the MVMH Executive Director's and the DOCCS Defendants' Motions To Dismiss, and denies without prejudice Plaintiff's request for the appointment of counsel.  Because this is the first adjudication of Plaintiff's claims before this Court, the dismissal of those claims is without prejudice.  Plaintiff may file an amended complaint within thirty days of the date of this Opinion & Order.  The amended complaint should contain appropriate changes to remedy the deficiencies identified above.  Plaintiff is advised that the amended complaint will replace, not supplement, the original Complaint (as well as Plaintiff's many other filings), and therefore must contain *all* of the alleged facts that the Plaintiff wishes the Court to consider.  Should Plaintiff choose to file an amended complaint, the Court will take the appropriate steps with respect to service of process given that Plaintiff is proceeding in forma pauperis.  (*See* Dkt. No. 16.)  However, if Plaintiff fails to abide by the thirty-day deadline, his claims may be dismissed with prejudice.[18]

---

[18] Plaintiff may consider contacting the New York Legal Assistance Group's ("NYLAG") Clinic for Pro Se Litigants in the Southern District of New York, which is a free legal clinic staffed by attorneys and paralegals to assist those who are representing themselves in civil lawsuits in this District.  The clinic is run by a private organization; it is not part of, or run by, the Court.  It cannot accept filings on behalf of the Court.

To receive limited-scope assistance from the clinic, Plaintiff may complete the clinic's intake form on a computer or phone at: https://tinyurl.com/NYLAG-ProSe-OI.  If Plaintiff has questions regarding the form or is unable to complete it, he may leave a voicemail at (212) 659-5190.  The Clinic is open on weekdays from 10 a.m. to 4 p.m., except on days when the Court is closed.

The Clerk of Court is respectfully directed to mail a copy of this Opinion & Order to Plaintiff's address, and to terminate all pending motions.  (*See* Dkt. Nos. 27, 36–37, 48.)

SO ORDERED.

Dated:   March 19, 2024
         White Plains, New York

_____
KENNETH M. KARAS
United States District Judge